**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (VSB No. 38326)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: | Chapter 11 |
| JPK NEWCO, LLC, | Case No. 25-00200 (ELG) |
| Debtor. | Subchapter V |
| JPK NEWCO, LLC, *et al.*, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-10015 (ELG) |
| DEVELOPER RE1, LLC, *et al*, | |
| Defendants. | |

**MOTION OF DEVELOPER RE1, LLC AND 423 KENNEDY ST**
**HOLDINGS, LLC FOR ABSTENTION AND TO DISMISS OR STAY PROCEEDINGS**

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy" and together with RE1, the "Claimants"), by counsel, hereby move the Court to stay or dismiss the above-captioned Chapter 11 proceeding (the "Chapter 11 Proceeding") filed by JPK NewCo, LLC ("JPK") and/or the above-captioned adversary proceeding (the "Adversary Proceeding" and collectively with the Chapter 11 Proceeding, the "Proceedings") filed by JPK, WCP Fund I LLC ("WCP Fund"), SF NU, LLC ("SF NU"), and Russell Drazin ("Mr. Drazin") (collectively, "WCP Parties"), pursuant to 11 U.S.C. § 305, or abstain from hearing the Adversary Proceeding in favor

4931-9722-8641.1

of an ongoing state-court proceeding, pursuant to 28 U.S.C. §§ 1334(c)(1) and (c)(2), and Federal Rule of Bankruptcy Procedure 5011. In support for the requested relief, the Claimants state as follows:

## Summary of Argument

Both of the Proceedings arise from manufactured jurisdiction which conflicts with ongoing litigation in the D.C. Superior Court and creates the potential for disparate treatment of the same underlying facts and legal claims. The Bankruptcy Code was not intended to be utilized as a litigation tactic and in a case such as this, the Court should stay or dismiss the Proceedings, or at a minimum, abstain from hearing the Adversary Proceeding until *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.,* Case No. 2023-CAB-004260 (D.C. Super. Ct.) and *Developer RE1, LLC v. the WCP Fund I, LLC, et al.,* 2022-CAB-005935 (D.C. Super Ct.) (hereinafter, the "Consolidated Superior Court Cases") are resolved.[1] The Adversary Proceeding is either a non-core proceeding that is subject to mandatory abstention by the Court pursuant to 28 U.S.C. § 1334(c)(2) or from which the Court should exercise permissive abstention under 28 U.S.C. § 1334(c)(1). Under any of these standards, the Court should refuse to adjudicate the Adversary Proceeding since it presents the same dispute already being litigated in the Consolidated Superior Court Cases. Staying or dismissing the Proceedings, or, at minimum, abstaining as to the Adversary Proceeding here promotes judicial economy and will conserve estate resources until the D.C. Superior Court ultimately enters a final judgment. Just as the courts held on three separate occasions that Johnson & Johnson should resolve their litigation in the original forums, so too should the Debtor. *See, e.g. In re Red River Talc LLC*, 670 B.R. 251 (Bankr. S.D. Tex. 2025).

---

[1] On June 7, 2024, the parties filed a joint motion to consolidate the two cases, and on June 11, 2024, Judge Scott issued an order consolidating the two cases, designating the RE1 case (2022-CA-005935-B) as the lead case in which all future filings should be made.

**Factual and Procedural Background**

1. The factual and procedural background is well known to this Court from certain prior cases and is hereby incorporated by reference,[2] as is the factual background in the *Motion to Dismiss Chapter 11 Petition Filed In Bad Faith* [Case No. 25-00200; Docket No. 19].

2. As previously noted, WCP Fund loaned funds to the Claimants which were secured by a first promissory note, second promissory note, first deed of trust, and second deed of trust for each of the respective properties. The second promissory notes for each of the properties will hereinafter be referred to as the "Second Notes".

3. Facing the very real threat of losing its litigation against the Claimants, the WCP Parties, unbeknownst to the Claimants, arranged for the Second Notes to be transferred to the Debtor in April of 2024. So secretive was this scheme by WCP and the Debtor that at no point during the discovery that followed did the WCP Parties produce any documents: (a) about the formation of the Debtor; (b) showing how and for what consideration the Debtor acquired "the promissory note and deed of trust from the WCP"; or (c) showing any related communications concerning those transactions. The Claimants learned that the Debtor conducts no business, has no assets but for the loan documents[3] and seemingly exists for no purpose other than isolating an alleged asset of WCP Fund in a remote entity. In essence, the Debtor entity was created solely to manufacture bankruptcy jurisdiction and hinder the efforts of the Claimants. The Debtor subsequently did just that, it caused Mr. Sariri to file an involuntary bankruptcy proceeding to which the Debtor consented and waylaid the Consolidated Superior Court Cases. That original bankruptcy was subsequently dismissed.

---

[2] *See* Case No. 24-00262-ELG and Adv. Proc. No. 24-10023-ELG.
[3] The Debtor allegedly has a note payable from Energy Morrocco for a relatively de minimis amount. (the "Energy Morocco Note"). The validity and collectability of such note is still in dispute and upon information and belief, this note was created just to show a "business transaction."

4.       Shortly thereafter, the Debtor voluntarily filed the instant Chapter 11 Proceeding and immediately thereafter, the Adversary Proceeding. At the time of filing, the same issues raised in the Adversary Proceeding remain pending in the Consolidated Superior Court Cases. In essence, the Adversary Proceeding brought by the WCP Parties and the Consolidated Superior Court Cases brought by the Claimants together present state law cross claims for breach of contract, with both sides requesting appropriate damages for breach of the same loan documents.

5.       In connection with the Consolidated Superior Court Cases, the parties have already conducted extensive discovery and motions practice in connection therewith, including: (i) two motions for temporary restraining orders, (ii) a motion to dismiss and opposition thereto, (iii) the deposition of Mr. Daniel Huertas, (iv) interrogatories, (v) requests for production of documents, (vi) a deposition of Mr. Daniel Huertas, (vii) a motion for a protective order and opposition thereto, (viii) a motion to dismiss the counterclaim, (ix) opposition thereto, and (x) private mediation. The Adversary Proceeding simply seeks to now relitigate those issues in a different forum.

## Legal Argument

**A.    Abstention Pursuant to 11 U.S.C. § 305**

6.       This Court should either dismiss or suspend the Proceedings. Such abstention is both necessary and appropriate in this case. Section 305(a)(1) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension . . ." 11 U.S.C. § 305(a)(1). Relief pursuant to § 305(a) is appropriate where such action is in the best interest of both the creditors and the debtor. *In re TPG Troy, LLC*, 492 B.R. 150 (Bankr. S.D.N.Y. 2013); *In re Gerova Fin. Group, Ltd.*, 482 B.R. 86 (Bankr. S.D.N.Y. 2012). In determining whether section 305 relief is in the best interests of the creditors and the debtor, courts look to "the facts of the individual case while

4

considering a number of criteria." *In re Corino*, 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995). The decision is committed to the discretion of the Bankruptcy Court and is determined based on the totality of the circumstances. *In re Mylotte, David & Fitzpatrick*, 2007 WL 302352 *5 (Bankr. E.D. Pa. Oct. 11, 2007). Courts have generally looked to the following factors to gauge whether dismissal or suspension is in the best interests of the creditors and the debtor:

(a) economy and efficiency of administration;

(b) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(c) whether federal proceedings are necessary to reach a just and equitable solution;

(d) whether there is an alternative means of achieving an equitable distribution of assets;

(e) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(f) whether a non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(g) the purpose for which bankruptcy jurisdiction has been sought.

*See In re Northshore Mainland Services, Inc.*, 537 B.R. 192, 202 (Bankr. D. Del. 2015); *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr. D.R.I. 1990).

7. In this case, relief under section 305 is in the best interests of both the Debtor and the Claimants. The Debtor is not an operating entity and has, at most, a recently manufactured receivable in the form of the Second Notes and the Energy Morocco Note. There are no employees, there is only one other alleged creditor and there are no ongoing operations which the Debtor must preserve. In short, there is nothing time-sensitive about the Debtor's case. In contrast, should the Proceedings continue, the Debtor will be forced to expend resources and incur

administrative expenses to fulfill the requirements of the Bankruptcy Code. Expenditures which may be unnecessary and will only serve to reduce any potential distribution to creditors. Abstention will benefit the Debtor by allowing it to avoid the costs and distraction of bankruptcy and will benefit the Claimants because their rights and remedies will be adequately addressed in the Superior Court Case.

8. The second abstention factor is plainly satisfied considering the Consolidated Superior Court Cases are currently pending before the D.C. Superior Court. The Debtor's attempt at jurisdictional maneuvering is not in the best interests of judicial economy. Forcing the Claimants to litigate and re-litigate matters that are pending before the D.C. Superior Court is duplicative, unnecessary, and inefficient. In addition, the continuation of the Chapter 11 Proceeding at this point will also likely cause the Debtor to face unnecessary litigation in connection therewith, absent finality of the issues underlying the Consolidated Superior Court Cases.

9. Abstention solves these problems and dramatically streamlines the parties' disputes. Staying or dismissing the Proceedings would provide the most efficient use of the Debtor's and the Claimants' resources.

10. Federal bankruptcy proceedings are not necessary to resolve the Debtor's issues. As noted above, the D.C. Superior Court is already reviewing the claims which underlie the Proceedings. The D.C. Superior Court is more than capable of reaching a fair and equitable solution and candidly, is likely best equipped to interpret and apply the laws of the District of Columbia. Having the Adversary Proceeding heard in Federal Court at most, would be more expedient, but given the nature of the Debtor's business, any marginal delay in having the matters heard in D.C. Superior Court is not prejudicial in the slightest.

11.     The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U. S. 279, 286, 287 (1991). Here, the Debtor is not seeking a fresh start – it is shopping for what it believes will be a more favorable forum. It is well-established that courts should discourage forum-shopping so that the substantive rights of the litigants are not impacted by the location of the litigation. *See Butner v. United States*, 440 U.S. 48, 55 (1979). The Debtor is not a legitimate debtor with a business that needs a fresh start -- it is an alter ego of the WCP Fund, DP Capital , LLC d/b/a Washington Capital Partners, Mr. Huertas, and SF NU. The original noteholder could have and should have resolved its issues in the D.C. Superior Court. Instead, a new entity with no legitimate business purpose was formed, that entity was assigned the Second Notes without consideration and that new entity filed bankruptcy. The sole purpose of which was to try and force the Claimants to relitigate the Consolidated Superior Court Cases in a separate forum that it deems more friendly. There is no legitimate bankruptcy purpose here.

12.     For the reasons set forth above, the Claimants assert that it is appropriate for this court to stay or dismiss the Proceedings, pending resolution of the Consolidated Superior Court Cases, pursuant to 11 U.S.C. § 305.

**B.    The Adversary Proceeding is a Non-Core Proceeding That is Subject to Mandatory Abstention by the Court Pursuant to 28 U.S.C. § 1334(c)(2).**

13.     Mandatory abstention applies to the Adversary Proceeding since it is a non-core proceeding. Under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in, or related to cases under title 11." "A proceeding 'arises under' title 11 if a claim asserted is created by or based on a provision of the bankruptcy code." *C & B, L.L.C. v. Grubbs Emergency Servs., Inc. (In re Grubbs Construction Co.)*, 305 B.R. 476, 480 (Bankr. W.D. Ark. 2003) (citations omitted); *see Frelin v.*

7

*Oakwood Homes Corp.*, 292 B.R. 369, 377 (Bankr. E.D. Ark. 2003). A proceeding "arises in" a case if it has no existence outside the bankruptcy case and is not based on any right created by the Bankruptcy Code. *Id.* Courts identified core proceedings as those that "arise under" or "arise in" a bankruptcy case, while non-core proceedings are only "related to" the bankruptcy case. *Id.* (citations omitted).

14. Under § 1334(c)(2), a bankruptcy court must abstain from hearing a civil proceeding if: (1) a timely motion to abstain is made by a party to the proceeding; (2) the proceeding is based on a state law claim or state law cause of action; (3) the proceeding is related to a case under title 11 but did not arise under title 11 or in a case under title 11; (4) the proceeding could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334; (5) the proceeding is commenced in state court; and (6) the proceeding can be timely adjudicated in a state forum of appropriate jurisdiction. *See Frelin*, 292 B.R. 369, 377 (citing *In re Titan Energy, Inc.*, 837 F. 2d 325, 333 n. 14 (8th Cir. 1988)).

15. The Debtor and its special counsel basically rely on one fact to assert core jurisdiction, a turnover action under section 542. That argument, however, wholly ignores what really happened. Here the Debtor and its owners manufactured jurisdiction through the assignment and creation of a debt the Debtor knew that it could not pay. The true intent of the Bankruptcy Code is not being furthered here. Furthermore, the Debtor does not satisfy section 542.

16. The sole asset alleged in the Adversary Proceeding is a receivable. The Debtor assert such receivable is property of the Debtor and subject to section 542. What the Debtor ignores, however, is the remainder of section 542(b) which provides that such receivable must be "matured, payable on demand, or payable on order [ie: uncontingent and liquidated]." 11 U.S.C. § 542. Such debt must also be presently payable. *See Porter-Hayden Co. v. First State Mgmt.*

8

*Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 732 (Bankr. D. Md. 2004) (quoting 5 Collier on Bankruptcy ¶ 542.03 n.1 (15th ed. rev. 2003)). The terms 'matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor.' " *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. August 14, 2007) (quoting *In re CIS Corp.,* 172 B.R. 748, 760 (S.D.N.Y. 1994)). In short, section 542(b) is appropriate **only when the contracting party is "unconditionally liable."** *See In re MF Glob., Inc.*, 531 B.R. 424, 437-38 (Bankr. S.D.N.Y. 2015) (emphasis added). The Court can review the Consolidated Superior Court Cases and determine that the Adversary Proceeding is miles away from satisfying the applicable standard. In fact, the only reason the Debtor has engaged in these actions is because it was starting to become apparent that the Claimants hold real lender liability claims. The Debtor, concerned about where the litigation was headed, engaged in the current scheme. Given the alleged receivable is anything but certain, which section 542 of the Bankruptcy Code requires to impose jurisdiction, the Court must abstain.

17. Relatedly, since the claims set forth in the Adversary Proceeding are solely a question of state law, the complaint is not based on bankruptcy law and could exist entirely outside the bankruptcy case. *See In re Grubbs Construction Co.*, 305 B.R. at 480. Thus, the Adversary Proceeding is a non-core proceeding since it cannot be considered as arising under or in a case under title 11 and jurisdiction is solely established under 1334(b) as "related to" a case under title 11. *See id.*

18. As for the specific requirements of mandatory abstention, the first requirement under 28 U.S.C. § 1334(c)(2) is met in this case since this Motion to Abstain has been filed within

21 days of the Court orally denying Claimants' request to dismiss the underlying bankruptcy case and the stay request as moot.[4]

19. The second requirement under 28 U.S.C. § 1334(c)(2) is met since the causes of action set forth in the Adversary Proceeding are disguised issues of contractual interpretation. In essence, the open issue is whether the WCP Fund breached the terms of the contract such that the Claimants have valid lender liability claims. The Claimants were pursuing these causes of action in the Consolidated Superior Court Cases, which issues are ultimately a question of state law. The Adversary Proceeding is really a counterclaim to such proceedings. No federal law claims are asserted against the parties in either action.

20. With regard to the third requirement, as detailed above, the Adversary Proceeding is a non-core, "related to" proceeding.

21. Under the fourth requirement, the Adversary Proceeding could not qualify for federal jurisdiction outside of 28 U.S.C. § 1334. Since the Adversary Proceeding is based on state law claims, there is no federal question at issue. The Adversary Proceeding is here only because the WCP Fund manufactured jurisdiction.

22. Under the fifth requirement, the dispute described in the Adversary Proceeding is already being adjudicated in the Consolidated Superior Court Cases. Furthermore, the WCP Parties and the Claimants have already invested significant time and expense litigating the Consolidated Superior Court Cases. The Adversary Proceeding does not present any cause of action that is unique to this Court that cannot be resolved in the Consolidated Superior Court Cases. The focus of the Consolidated Superior Court Cases concerns the WCP Parties intentionally frustrating the Claimant's refinancing efforts and evading the text and spirit of the loan documents

---

[4] The Court has not yet issued orders memorializing its decisions from July 31, 2025.

10

by wrongfully placing the Claimants in default. The Claimants were ultimately unable to make payments on the Notes, which was a by-product of the breach by the WCP Parties under the loan documents. The Adversary Proceeding claims arise from the same facts and issues. The parties have already litigated these very issues in D.C. Superior Court over the course of approximately three years.

23. Under the sixth requirement, the parties' dispute under the loan documents can be timely adjudicated in the Consolidated Superior Court Cases. Prior to the commencement of the Adversary Proceeding, the D.C. Superior Court was advancing the consolidated cases. In fact, a trial date was set in the Consolidated Superior Court Cases. Additionally, the parties commenced formal discovery, including scheduling depositions. Significantly, the Claimants obtained a temporary restraining order which directly correlates to the same dispute presented in the Adversary Proceeding. In contrast, were this Court to decline to abstain, it would be starting from the beginning and covering matters already handled by the D.C Superior Court. Moreover, this Court has already made a finding that the claims here could be timely adjudicated in the Superior Court. *See Order Granting Renewed Motion to Remand* [Adv. Proc. No. 24-10023; May 12, 2025].

24. Since all the requirements for mandatory abstention by this Court have been satisfied, the Court should abstain from adjudicating the Adversary Proceeding.

**C.    In the Alternative, the Court Should Abstain from Adjudicating the Adversary Proceeding Based on Discretionary Abstention Under 28 U.S.C. § 1334(c)(1).**

25. In the event this Court finds that the requirements for mandatory abstention are not satisfied, it should still exercise its discretion to abstain from adjudicating this case in the interests of comity and respect for state law pursuant to 28 U.S.C. § 1334(c)(1).

26. Under 28 U.S.C. § 1334(c)(1), "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from

11

abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

27. In evaluating whether permissive abstention is appropriate, courts have looked to a variety of factors, including but not limited to: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants. *See, e.g., In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998). In addition, if most of the factors have been established for mandatory abstention, "bankruptcy courts should give careful consideration to whether it would be appropriate to exercise their discretion to abstain under section 1334(c)(1)." *Frelin*, 292 B.R. at 383 (citing *In re Williams*, 256 B.R. 885 (8th Cir. BAP 2001))

28. Abstention would provide the most efficient use of estate resources, prevent unjustified interference with the D.C. Superior Court's authority and will have a positive effect on the administration of the Debtor's bankruptcy estate. The Consolidated Superior Court Cases were filed significantly before the Adversary Proceeding and the proceedings in the Consolidated Superior Court Cases have already progressed far beyond the current status of the Adversary Proceeding. The Claimants have already spent considerable time, energy and resources in the Consolidated Superior Court Cases as noted in paragraph 6, *infra*. Forcing the Claimants to essentially re-litigate its efforts in the Consolidated Superior Court Cases in the Adversary Proceeding is duplicative and unnecessary. Thus, abstention by the Court will serve the best interests of judicial economy.

29.     As mentioned previously, the Adversary Proceeding presents state law claims that are already being addressed in the Superior Court Case.  There are no issues presented under the Adversary Proceeding that are unique to bankruptcy law and any argument regarding jurisdictional basis for the Adversary Proceeding is questionable at best.  The state law causes of action asserted by all parties involved are best determined by the D.C. Superior Court who routinely hears such matters.  Thus, the interest of comity favors abstention.

30.     Since the Consolidated Superior Court Cases involve non-debtor defendants, it may proceed regardless of the Debtor's bankruptcy filing.  *See Frelin*, 292 B.R. at 385; *see also In re Grubbs Construction Co.*, 305 B.R. at 482.  This also presents issues with retaining jurisdiction in the Adversary Proceeding.  The D.C. Superior Court could reach the conclusion that the Claimants have no liability under the notes, that the Claimants are entitled to a reduction in their debt or that the WCP Fund owes the Claimants money.  If the Adversary Proceeding proceeds separately, it could potentially reach a different conclusion but be premised on the same facts.  This would create an irreconcilable disparity as the Debtor took the Second Notes subject to whatever defenses and rights of setoff the Claimants have against the WCP Fund.  Absent such event, given the nature of the Consolidated Superior Court Cases, the decision of the D.C. Superior Court will provide finality for the dispute presented under the Adversary Proceeding even if the Debtor is not a party. *See Frelin*, 292 B.R. 369 at 385.  For these reasons, abstention is the logical conclusion.

**D.      Conclusion**

31.     For the reasons stated above, the Court should dismiss or stay the Proceedings, or at a minimum, abstain from adjudicating the Adversary Proceeding.  The Adversary Proceeding is the determinative factor for the success of the Chapter 11 Proceeding and those issues are already being litigated in the Consolidated Superior Court Cases.  The Debtor's collection efforts against the Claimants are subject to the same rights and defenses as the Claimants have against the WCP

Fund. If the Claimants prevail in the Consolidated Superior Court Cases and the D.C. Superior Court finds that the Claimants either have a total right of setoff or that money is owed to the Claimants, the Adversary Proceeding has no value and the Chapter 11 Proceeding will likely be dismissed.  If the D.C. Superior Court finds in favor of the WCP Fund, then the Adversary Proceeding can likely be resolved in short order since the underlying facts are similar and the Chapter 11 Proceeding likely proceeds uncontested.  In short, this Court has two realistic options: (i) allow the Adversary Proceeding to proceed, recognizing that this Court may reach an entirely different conclusion from the D.C. Superior Court, which will require reconciliation, likely by an appellate court; or (ii) abstain from hearing the Adversary Proceeding and stay or dismiss the Chapter 11 Proceeding while the parties finish the Consolidated Superior Court Cases.[5] To abstain from adjudicating the Adversary Proceeding will allow the Court to obtain the benefit of judicial economy by deferring to the D.C. Superior Court, which court has been and can continue to adjudicate the issues between the parties..

WHEREFORE, the Claimants requests that the Court (i) stay or dismiss the Proceedings; (ii) or in the alternative, abstain from adjudicating the Adversary Proceeding, and (iii) grant such other and further relief deemed just and proper.

[*Remainder of page intentionally left blank*]

---

[5] The Debtor has intimated that it will seek to remove the Consolidated Superior Court Cases to this Court.  The Claimants believe that such efforts would be completely contrary to the Bankruptcy Code, a futile effort and nothing but the furtherance of a litigation tactic.

Dated: August 20, 2025

**DEVELOPER RE1, LLC AND
423 KENNEDY ST HOLDINGS, LLC,**

/s/ *Jeremy S. Williams*
Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com

and

James D. Sadowski (VSB No. 38326)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Co-Counsel for Developer RE1, LLC and
423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on August 20, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all necessary parties.

/s/ *Jeremy S. Williams*
Counsel

4931-9722-8641.1