**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA[1]**

| | |
|---|---|
| In re: ) | |
| ) | |
| JPK NewCo LLC, ) | Case No. 25-200-ELG |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |
| ) | |
| JPK NewCo LLC, *et al*, ) | |
| ) | Adv. Case No. 25-10015-ELG |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Developer RE1 LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| Developer RE1 LLC, *et al.* ) | Adv. Case No. 25-10037-ELG |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al*. ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO MOTIONS TO WITHDRAW THE REFERENCE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the

---

[1] The Local Rules of this Honorable Court require this opposition brief to be filed ". . . with the Clerk of the District Court. . ." DCt.LBR 5011-6(a). However, insofar as there does not yet exist a District Court case number for these matters, such does not appear to be possible. Accordingly, this brief is being filed in the United States Bankruptcy Court for the District of Columbia which, by coincidence, happens to share a Clerk of the Court with the District Court. *See* DCt.LBR 5011-5(2) (providing for filing in the Bankruptcy Court before a District Court docket is opened).

1

"Respondents" and each a "Respondent") and JPK NewCo LLC, debtor-in-possession ("JPK" or the "Debtor"), by and through undersigned counsel, and in opposition to the motion to withdraw the reference (the "Motions") filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Movants" and each a "Movant") state as follows:

## I. Introduction

The Movants are borrowers, under various commercial loan documents, who very much do not want their lender liability claims to be adjudicated by a court that habitually considers matters related to the adjustment of the commercial debtor/creditor relationship. The Movants have sought to have JPK's bankruptcy dismissed, to no avail. The Movants have sought to have the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") abstain from hearing this litigation, or remand part of this litigation to the District of Columbia Superior Court (the "Superior Court"), also to no avail. The Movants now ask this Honorable Court to withdraw the reference and assume control of the instant litigation. For both substantive and procedural reasons, this effort should, too, be denied.

The procedural rationale for denial of the Motions is simple. The Local Rules of this Honorable Court require a motion to withdraw the reference be filed within 35 days of service of the paper that is the basis for the motion. *See* DCt.LBR 5011-2(b). These are both adversary proceedings. One of these cases was filed in the Bankruptcy Court, with a summons served on May 30, 2025. *See JPK NewCo LLC, et al. v. Developer RE1 LLC, et al.*, Case No. 25-10015-ELG (Bankr. D.D.C. 2025) (the "Original Adversary") at DE #4. The other was removed to the Bankruptcy Court on September 1, 2025, with service of said notice being effectuated therewith. *See Developer RE1 LLC, et al. v. DP Capital LLC, et al.*, Case No. 25-10037-ELG (Bankr. D.D.C. 2025) (the "Removed Adversary").

The deadline to seek withdrawal of the reference in the Original Adversary was thusly July 7, 2025. The deadline to seek withdrawal of the reference in the Removed Adversary was October 6, 2025. Both Motions were filed on October 8, 2025.[2]

Substantively, the Motions fare no better. The crux of the Movants' argument is that (i) these cases are not "core proceedings," as that term is used in Title 28 of the United States Code; (ii) judicial economy favors having the parties manage their disputes in multiple courts at the same time; and (iii) there is a right to trial by jury. Yet all three of these contentions are fundamentally misplaced.

Both cases are statutorily "core" proceedings. In fact, as observed by the Bankruptcy Court during a hearing on one of the Movants' prior efforts to scuttle these cases, the cases are "core" for multiple, independent reasons.

Similarly, judicial economy does not favor having a debtor's main case in one court and adversary proceedings in another court—even if a court literally down the hall. Title 11 of the United States Code (the "Bankruptcy Code") favors the synergy of having a single court address all matters concerning a debtor in bankruptcy. Shirking this rationale is illogical.

Equally, there does not exist a right to trial by jury in either of these cases—the Movants have waived any such right in the relevant loan documents. Yet even if such a right were somehow extant, a jury trial could be conducted in the Bankruptcy Court (which, notably, has a jury box),

---

[2] It appears the Movants attempted to file similar motions on October 6, 2025 but neglected to tender the correlative filing fees and otherwise ran afoul of the filing rules of the Bankruptcy Court. The Movants then elected to file the Motions anew on October 8, 2025. It is recognized this date is material in the Removed Adversary, given that a filing on October 6, 2025 would have been timely. This date is immaterial in the Original Adversary, where the Movants missed the deadline by several months.

3

or the cases could follow well-established precedent by remaining in the Bankruptcy Court for all pre-trial purposes.

For these reasons, and as extrapolated upon *infra*, the Motions should be denied.

**II.     Relevant Facts and Allegations**

Despite the flurry of court filings, both the Original Adversary and the New Adversary—which, the parties seem to agree, concern largely (albeit not entirely) the same subject matter—emanate from a fairly simply factual prism:

1. DRL borrowed approximately $4.1 million, spread across two promissory notes, secured by liens on the entity's singular real estate asset.

2. 423 Kennedy similarly borrowed approximately $9.4 million, through two promissory notes, with those obligations also being secured against that entity's singular real estate asset.

3. These were all commercial loan transactions between validly organized limited liability companies and private lenders, with the subject loans being used to develop commercial real estate.

4. The promissory notes and deeds of trust were held by WCP and certain related parties through the dates of maturity. DRL and 423 Kennedy failed to make several interest payments on time, failed to timely pay real estate taxes, and allowed other senior liens to accrue on the real estate assets.

5. After these failures—all of which are events of default under the pertinent loan documents—WCP (one of the lenders and the servicer for all lenders) declared the Movants to be in default.

6. The Movants believe WCP's default declaration was made with pretextual motivations and stemmed not from these objective defaults but, rather, discontent between WCP's principal and the principal of DRL and 423 Kennedy, who helmed another entity that had also borrowed money from WCP and had seen that loan fall into disrepair and default.

7. DRL and 423 Kennedy then failed to repay the notes at maturity and, instead, commenced litigation endeavoring to enjoin WCP and related entities from foreclosing.

8. As part of that litigation, DRL and 423 Kennedy have urged that (i) consumer lending standards should apply to commercial debt instruments; and (ii) District of Columbia law governing the roles of trustees, serving under deeds of trust, should be modified to impose upon such trustees an affirmative obligation to conduct fact-finding inquiries and adjudicate disputes between lenders and borrowers before performing foreclosures.

9. DRL and 423 Kennedy, as part of their claims, seek *in rem* relief against the promissory notes on which they are obligated, essentially arguing for partial or full cancellation of the debt.

10. In an effort to silo the promissory notes under attack from DRL and 423 Kennedy, and after the Superior Court enjoined the entities and the trustee under the deeds of trust from foreclosing, certain notes were transferred to JPK.

11. JPK is now a debtor in bankruptcy and, as part of the bankruptcy process, brought suit against DRL and 423 Kennedy in the Bankruptcy Court, while also removing the consolidated suit from the Superior Court.

12. DRL and 423 Kennedy allege the transfer of the notes to JPK to have been a fraudulent conveyance that should be avoided; JPK asserts DRL and 423 Kennedy have a

fundamentally flawed of the Bankruptcy Code's provisions governing fraudulent conveyances and, too, of the District of Columbia Code's provisions governing fraudulent conveyances.

13. DRL and 423 Kennedy moved to dismiss JPK's bankruptcy as a bad faith filing and were unsuccessful in so doing. They have now appealed that order.

14. DRL and 423 Kennedy also moved to remand the Removed Adversary and to have the Bankruptcy Court abstain from hearing the Original Adversary. Those efforts were similarly unsuccessful.

15. DRL and 423 Kennedy now ask this Honorable Court to withdraw the reference in both the Original Adversary and the Removed Adversary.

### III.     Standard: Withdrawal of the Reference

The Movants correctly observe that withdrawal of the reference of a case to a bankruptcy court is governed by Title 28 of the United States Code which allows, *inter alia*:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

As this Honorable Court has had occasion to explain, mandatory withdrawal (which the Movants do *not* urge to be applicable *sub judice*) concerns only non-bankruptcy matters of federal law, while permissive withdrawal turns on a multi-prong, disjunctive consideration:

> A district court is obligated to withdraw the reference when cases or claims require "material consideration of non-bankruptcy federal law," but in any event may withdraw a reference based upon consideration of whether the proceedings are core proceedings, "the efficient use of judicial resources, delay and costs to the parties,

6

uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."

*In re Ellipso, Inc.*, 477 B.R. 278, 280-81 (D.D.C. 2012) (quoting *Security Farms v. International Bhd. Of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997); citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Sergent v. MicKinstry*, 2012 U.S. Dist. LEXIS 39656, *44-45 (D. Ky. Mar. 21, 2012); *Vieira v. AGM, II, LLC*, 366 B.R. 532, 538 (D.S.C. 2007)). *See also Capitol Hill Grp. v. DCA Capitol Hill LTAC, LLC (In re Specialty Hosp.)*, 558 B.R. 471 (D.D.C. 2016) (holding similarly).

  IV.   **Argument: The Motion Merits Denial**

   a. **These are Core Proceedings**

The United States Code differentiates between proceedings that are "core" to bankruptcy cases and those that are not, with the former variety being afforded a presumption of proper venue in a bankruptcy court and the latter variety being more conceptually nomadic in nature. The core/non-core distinction governs much of the adversary docket in bankruptcy cases and, as here, is relevant to whether or not the reference of a case to a bankruptcy court ought to be withdrawn. These proceedings are both definitively "core" in nature.

Title 28 provides for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate. . .
>
> (E) orders to turn over property of the estate. . .
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances. . .
>
> (K) determinations of the validity, extent, or priority of liens. . .

7

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

The first two counts of the Original Adversary case are for turnover. Those are, facially and self-evidently, core causes of action. 28 U.S.C. § 157(b)(2)(E). In fact, a cause of action for "turnover" is uniquely a creature of bankruptcy law, being a statutory claim rooted in Section 542 of the Bankruptcy Code. *See* 11 U.S.C. § 542(b) (". . . an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.").

Moreover, these cases are "core" for several other reasons. As a starting point, the merits, *vel non*, of the Movants' theories of liability became core when the Movants filed proofs of claim in JPK's bankruptcy case. *See* 28 U.S.C. § 157(b)(2)(C); *Enovational Corp. v. Md. (In re Enovational Corp.)*, No. 22-00055-ELG, 2023 Bankr. LEXIS 1878, at *11 (Bankr. D.D.C. July 27, 2023) (". . . a bankruptcy court may be called upon to resolve certain core matters including amounts owed on proofs of claims. . ."); *Va. Hosp. Ctr.-Arlington Health Sys. v. Akl (In re Akl)*, 397 B.R. 546, 550 (Bankr. D.D.C. 2008) (noting issues concerning proofs of claim to be core proceedings); *Richardson v. Nationstar Mortg. (In re Richardson)*, 2018 Bankr. LEXIS 2759, at *8 (Bankr. D.D.C. Sep. 11, 2018) ("If Count I had any validity, the amounts recovered pursuant to Count I would be a setoff against Richardson's liability to Nationstar, and, accordingly, the adjudication of Count I is part of the adjudication of Richardson's objection to Nationstar's proof of claim. That makes it a core proceeding."). Indeed, as observed by the Bankruptcy Court more than 40 years ago:

> Although this Court is skeptical of plaintiff's assertion that its claim is a core proceeding because plaintiff seeks an order "to turn over property of the estate," the Court has no doubt that an appropriate basis for classification as a core proceeding does exist. That basis is found in 28 U.S.C. § 157(b)(2)(C), which provides that "counterclaims by the estate against persons filing claims against the estate" constitute core proceedings. It is true that plaintiff has not denominated its complaint in this adversary proceeding as a counterclaim to defendant's proof of claim which was earlier filed in this Debtor's bankruptcy case, but it would seem relatively simple for plaintiff to amend the complaint so as to cast it in terms of a counterclaim to the proof of claim.

*In re Auto-Pak, Inc.*, 52 B.R. 3, 4-5 (Bankr. D.D.C. 1985) (Bason, J.).

To be sure, the Movants have both filed proofs of claim. Those claims are both premised upon the contentions the Movants seem to believe to lessen (or abrogate) their liability on the promissory notes. It is difficult to see the Original Adversary as being anything other than a *de facto* counterclaim to those proofs of claim.

So, too, are these core proceedings because part of the relief sought is a determination concerning an alleged fraudulent conveyance. 28 U.S.C. § 157(b)(2)(H). The Movants allege, in the Removed Adversary, that JPK received the two promissory notes, and correlative deeds of trust, through a fraudulent conveyance. JPK, in the Original Complaint, seeks a declaration that no fraudulent conveyance is afoot. These are patently core, being "proceeding[s] to determine . . . fraudulent conveyances."

Additionally, the Movants—in the Removed Adversary—seek a determination as to the validity and extent of the liens held by JPK on the Movants' respective assets. Such would seem the epitome of a suit seeking "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K).

More broadly, these are cases through which JPK—a debtor in bankruptcy— is trying to collect upon the notes it holds, and to liquidate its obligations (if any) to the Movants, as part of an effort to comprehensively reorganize. Even putting aside the plain language of Section 157, it

9

is genuinely difficult to conceive of a more emphatically "core" proceeding. The issues *sub judice* are those that are integral to JPK's emergence from chapter 11. Suggesting those issues to not be core to this case tests credulity.

### b. Judicial Efficiency Militates Against Withdrawing the Reference and These Cases are Not Triable to a Jury

The Movants also suggest judicial efficiency to favor withdrawing the reference since the Movants refuse to consent to a jury trial in front of the Bankruptcy Court. In so doing, the Movants neglect to mention that the loan documents underlying these cases contain blanket waivers of any right to trial by jury. Yet even without such waivers, such a position misses the mark: these are core proceedings concerning subject matter Congress has deemed best handled by a bankruptcy court. *If* there is to be a trial, and *if* the jury waivers are ultimately held to be invalid, and *if* these cases survive dispositive motions, the cases may then be transferred for trial. But insisting upon such now, because the Movants self-servingly refuse to consent to a bankruptcy court jury trial, is not grounds upon which to withdraw the reference.

As a starting point, the threat of a jury trial—harped upon repeatedly in the Motion—is seemingly illusory, with the loan documents underlying this dispute providing, *inter alia*:

> The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue.

Yet even if, *arguendo*, there did exist a right to trial by jury, the Movants appear to be fundamentally misapprehending the notion of judicial efficiency. These are cases well known to the Bankruptcy Court, intimately related to the pendency of a chapter 11 case in the Bankruptcy Court, the outcome of which will materially impact a debtor yearning to reorganize. Judicial efficiency assuredly favors keeping these cases in the Bankruptcy Court—not bifurcating them

such that one or more of the adversary proceedings is in this Honorable Court while the underlying chapter 11 case is in the Bankruptcy Court. (And given that one of the two cases is in a posture where the deadline to withdraw the reference long-ago lapsed, it would seem difficult to conceive of how the Motion correlative to that case could be granted in any event, thus creating an even more inefficient paradigm whereby two related cases would be heard by two separate courts.)

The solution, rather, is one that has long been acknowledged: if there is a right to trial by jury, all pretrial matters occur in the Bankruptcy Court and the case is then transferred when—and only when—ready for trial. *See, e.g.*, *Kaiser Grp. Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Grp. Int'l, Inc.)*, 421 B.R. 1, 18 (Bankr. D.D.C. 2009) ("The claims are inseparably intertwined with the bankruptcy case. A bankruptcy court can complete the pretrial matters in this case and, should the case continue to trial, the district court can withdraw the reference to the bankruptcy court and conduct a jury trial."); *Post Confirmation Bd. of Wadleigh Energy Grp., Inc. v. Wadleigh*, 516 B.R. 850, 854 (E.D. La. 2014) ("However, 'the existence of a jury demand does not mandate immediate withdrawal of the reference' because 'it may better serve judicial economy . . . for the bankruptcy court to resolve pre-trial matters.'") (quoting *In re OCA, Inc.*, 2006 U.S. Dist. LEXIS 67035, 2006 WL 4029578, at *5 (E.D. La. Sept. 19, 2006)).

Or, as stated by the United States District Court for the Southern District of New York, in connection with one of the largest bankruptcy cases in American history: "The case law is clear that 'a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial.'" *Official Comm. of Unsecured Creditors of Enron Corp. v. Lay (In re Enron Corp.)*, 295 B.R. 21, 27 (S.D.N.Y. 2003) (quoting *Enron Power Mktg. v. City of Santa Clara (In re Enron Power Mktg.)*, 2003 U.S. Dist. LEXIS 189, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003)).

As noted *supra*, the Motion in one of these cases was filed several months after the deadline to do so. The Motion in the other case is an admittedly closer call. But from these timelines may be understood the larger issue: the Movants have tried—every way they can—to have this matter expelled from the Bankruptcy Court. Having failed on each of those fronts, they now seek to have the reference withdrawn. Such is, no doubt, their prerogative. But it is fundamentally difficult to credit an argument built around judicial economy when the Movants' prior efforts have created a prism whereby the Bankruptcy Court is so extensively familiar with these cases and the nuances thereof.

### V.     Conclusion

Bankruptcy courts exist for a reason. Corporate reorganization is a niche legal area and adjustment of the debtor/creditor relationship is an often hearing-intensive, strenuous corner of the federal judicial system. The Bankruptcy Court has done a laudable job overseeing the reorganization of JPK and handling these correlative adversary proceedings thus far. To be sure, the Movants may not much like how things have progressed in that venue, but such is a far cry from good cause to fundamentally upend the normative rigors of the bankruptcy system and withdraw the reference of these two cases.

The Respondents do, however, wish to be clear: they do not doubt—for one moment—that they would receive a fair and proper hearing in this Honorable Court. The Respondents do not doubt this Honorable Court's expertise on matters of commercial lending and commercial paper. The Respondents know this Honorable Court is, rightfully, often considered the most esteemed trial venue in the United States. And the Respondents, should the reference be withdrawn, will look forward to advancing these cases in this Honorable Court.

The Respondents also know the Bankruptcy Court is an expert and efficient venue, though. That is the court where these cases pend now. That is the court to which these cases have been referred. That is a court that, legally, forms a "unit" of this Honorable Court. 28 U.S.C. § 151. And it thusly seems altogether proper, in the context of bankruptcy-specific causes of action in bankruptcy-specific cases, the outcome of which will profoundly impact a chapter 11 bankruptcy estate, to permit the Bankruptcy Court to continue doing the job it has been asked to carry out by the Local Rules of this Honorable Court. DCt.LBR 5011-1(a).

WHEREFORE, the Respondents respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: October 22, 2025     By:    /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig, Esq.
                                   Bar No. MD18071
                                   The VerStandig Law Firm, LLC
                                   9812 Falls Road, #114-160
                                   Potomac, Maryland 20854
                                   Phone: (301) 444-4600
                                   mac@mbvesq.com
                                   *Counsel for the Respondents*

### DCt.LBR 5011-6(a)(2-3) Statement

While the Respondents reserve their right to supplement the record in this matter, DCt.LBR 5011-5, the Respondents also appreciate that the Movants have designed the various opposition briefs authored by the Respondents in the Bankruptcy Court, and do not presently believe additional documents to necessitate inclusion.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of October, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig
